JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Darnell Washington appeals in these consolidated cases from his numerous convictions for trafficking in cocaine and preparation of cocaine for sale, all with schoolyard specifications, possession of cocaine, and possession of criminal tools.
 {¶ 2} Washington's fourteen assignments of error challenge the trial court's refusal to dismiss his cases for failure to comply with speedy trial requirements, denial of his request for identification of one of the police informants, neglect to recuse itself, admission of certain evidence at trial, and instructions to the jury; they also challenge his sentence, the performance of his trial counsel, and the conduct of the prosecutor. Washington further asserts his convictions are improper as allied offenses and also as based upon neither sufficient evidence nor the weight of the evidence.
 {¶ 3} This court has reviewed the record but finds none of Washington's challenges has merit. Therefore, his convictions and sentences are affirmed.
 {¶ 4} Washington's convictions result from police investigation of his activities over a period of time. The investigation was prompted by Duane Brandon, a former drug user who had offered to act for the police as a confidential, reliable informant ("CRI").
 {¶ 5} Brandon made this offer to Detective James Mendolera, in charge of the Southeast Area Law Enforcement ("SEALE") task force. In exchange for some help in some traffic cases in which Brandon had become involved, he told Mendolera he could obtain drugs from a person he knew as "Swell." Mendolera accepted Brandon's offer.
 {¶ 6} Brandon's first controlled drug purchase took place on October 5, 1999. Brandon dialed the pager number of "Swell," later identified as appellant Darnell Washington, from a pay telephone near Bedford Heights Police Headquarters. Det. Alan Henderson, a Maple Heights officer who had been assigned to the SEALE team, accompanied Brandon. When Washington returned the call, Brandon asked if he could buy two grams of crack cocaine. Washington agreed, instructing Brandon to bring the money and to meet him in the stairwell of his apartment building.
 {¶ 7} Henderson drove Brandon to the area, searched him, and provided $200 in cash. Henderson then from his vehicle videotaped Brandon as he walked to the apartment complex. Washington, who had been watching for Brandon from his apartment's balcony, met Brandon in the building stairwell. Washington accepted the money Brandon gave him and handed Brandon a packet that later proved to contain 1.7 grams of crack cocaine. Brandon then returned to Henderson's vehicle. Henderson stopped the videotape, appropriated the packet, and verified Brandon no longer had the money.
 {¶ 8} Brandon made a second, similar purchase from Washington on October 7, 1999. The second time, Brandon requested a smaller amount of crack cocaine for less money. Washington took the $150 Henderson had provided to Brandon and handed Brandon 1.4 grams of crack cocaine. Brandon's activities were monitored on this occasion by Mendolera and his partner via audio tape, as a microphone hidden on Brandon's person recorded the exchange.
 {¶ 9} Brandon made a third purchase of crack cocaine from Washington under Mendolera's supervision on October 12, 1999. On the third occasion, however, a problem occurred. Washington hurried the transaction in order to drive somewhere. After handing Brandon .082 grams of crack cocaine in exchange for $100, Washington glanced around warily as he exited the building. Washington apparently noticed Mendolera's vehicle at that time. This necessitated a change in plans regarding the retrieval of Brandon and also the execution of the search warrant for Washington's apartment that Mendolera apparently had obtained on October 8, 1999.
 {¶ 10} Mendolera went to Washington's apartment with the search warrant on the afternoon of October 13, 1999. Upon their entry the police officers discovered Washington hiding with one of his children "under the covers" in the child's bed. The scarcity of incriminating items subsequently found by the police officers suggested Washington had surmised he was under surveillance. However, Washington possessed the pager Brandon had been using to contact his drug supplier. Also inside the apartment the officers located both a digital scale and a baby food bottle on which cocaine residue adhered.
 {¶ 11} On November 30, 1999 Washington was indicted in Case No. CR-384060. The eight charges against him consisted of three counts relating to the October 5, 1999 transaction, three counts relating to the October 7, 1999 transaction, and two counts relating to the October 13, 1999 execution of the search warrant. He was charged with two counts of drug trafficking, R.C. 2925.03, with schoolyard and juvenile specifications, two counts of preparation of drugs for sale, R.C. 2925.07, with schoolyard and juvenile specifications, three counts of possession of crack cocaine, R.C. 2925.11, and one count of possession of criminal tools, R.C. 2923.24.
 {¶ 12} Before Washington could be arraigned on the foregoing charges, Mendolera became aware his suspect was continuing to sell drugs. Mendolera therefore revived his investigation of Washington by obtaining the services of a second CRI. The second CRI arranged a purchase with Washington that Mendolera attempted to record via video as well as audio means. Mendolera provided the second CRI with $200; upon his retrieval, the informant handed Mendolera 1.82 grams of crack cocaine.
 {¶ 13} The second CRI sought to make another purchase on January 3, 2000. However, Mendolera experienced technical difficulties with his equipment and lost sight of Washington's vehicle after the CRI entered it. Perhaps as a result, Mendolera completed his investigation of Washington at that point.
 {¶ 14} Washington subsequently was indicted on March 6, 2000 in Case No. CR-388092. Since several of the charges were duplicates of those already set forth in CR-384060, the state dismissed those prior to trial. Thus, in CR-388092 Washington was charged additionally in connection with the December 1, 1999 and January 3, 2000 incidents with two more counts each of possession of crack cocaine, trafficking in crack cocaine, and preparation of drugs for sale, together with one more count of possession of criminal tools.
 {¶ 15} Washington's cases were consolidated for a jury trial that took place in April, 2000. The jury ultimately found Washington guilty on all of the charges. On appeal, however, this court reversed Washington's convictions in State v. Washington (April 5, 2001), Cuyahoga App. Nos. 78005, 78006. Addressing only his first assignment of error, this court determined the trial court erred "when it ordered the closure of the courtroom during [Brandon's] testimony." Washington's cases thus were remanded "for a new trial."
 {¶ 16} The docket reflects the foregoing order of remand was journalized on April 16, 2001. On June 27, 2001 the Administrative Judge of the Cuyahoga County Court of Common Pleas issued a journal entry formally returning the cases to the docket of the original trial judge. Washington received the services of a new court-appointed attorney in his defense.
 {¶ 17} New trial counsel filed discovery motions in Washington's cases less than two weeks later. He requested a continuance of nine days at the first pretrial held on July 10, 2001. On July 19, 2001, defense counsel requested an additional eleven days' continuance.
 {¶ 18} On August 8, 2001 the trial court conducted a pretrial hearing; at its conclusion, the trial court journalized Washington's request for another continuance until August 23, 2001. The same journal entry also set Washington's cases for trial on September 25, 2001.
 {¶ 19} On August 29, 2001 Washington filed a motion requesting the trial judge to recuse herself, citing her familiarity with the cases. Washington also filed a motion to dismiss the cases; he argued the delay between this court's order of remand and the scheduled trial date was "unreasonable." The trial court denied the two motions.
 {¶ 20} Washington's case proceeded to trial on the scheduled date. The state presented the testimony of Brandon, the forensic analyst of the drugs, Mendolera, and two other police officers who had assisted him in his investigation. The state also introduced into evidence, inter alia, the audio and videotapes made during the incidents. Finally, the state attempted to obtain Washington's wife's testimony; however, she refused to provide any evidence.
 {¶ 21} The jury ultimately returned verdicts of guilty on the charges that related to the incidents of October 5, 7, and 12, and December 1, 1999, and to the execution of the search warrant on October 13, 1999. The jury found Washington not guilty of the offenses that related to the incident of January 3, 2000 and of the juvenile specifications.
 {¶ 22} At the sentencing hearing that immediately followed, the trial court imposed terms of incarceration that, when added, came to a total of thirteen years and eleven months.
 {¶ 23} Washington's appeal of his convictions and his sentences presents fourteen assignments of error for review. These will be combined when appropriate for discussion.
 {¶ 24} Washington's first assignment of error states:
 {¶ 25} "I. The court erred in denying Appellant's Motion to Dismiss based upon lack of speedy trial, thereby violating Appellant's right to a speedy trial as guaranteed him by the Sixth Amendment to the United States Constitution, The Ohio Constitution, and Ohio Revised Code Section 2945.71."
 {¶ 26} Washington argues he was denied his right to a speedy trial since his retrial after remand was held beyond the applicable time limit set forth in R.C. 2945.71. This court disagrees.
 {¶ 27} It is well-settled that R.C. 2945.71 does not apply to retrials. State v. Bigley (Aug. 14, 2002), Medina App. No. 02CA0017-M, citing State v. Fanning (1982), 1 Ohio St.3d 19, 21. Rather, the issue is whether the delay constitutionally was "reasonable." Id. Moreover, until under the peculiar circumstances of the case some delay occurs that can be considered "presumptively prejudicial," the reviewing court need not inquire into the remaining factors that weigh in the balance of reasonableness. Barker v. Wingo (1972), 407 U.S. 514, 530-531.[1]
 {¶ 28} Nothing presumptively prejudicial occurred in the instant cases. Although after reversal of Washington's original convictions approximately two months passed before the common pleas court administrative judge ordered the cases returned to the trial court's docket, Washington had not requested any action in the meantime. Washington's newly-assigned counsel, moreover, almost immediately took steps to familiarize himself with his client's cases. Thereafter, counsel requested a total of only thirty-five additional days of continuances before trial was scheduled. This certainly is a reasonable period of time for a practicing attorney to require in preparation for trial.
 {¶ 29} Since the circumstances, therefore, fail to demonstrate any presumptively prejudicial delay occurred, Washington's rights to a speedy trial were not violated. State v. Echols (2001), 146 Ohio App.3d 81. Accordingly, his first assignment of error is overruled.
 {¶ 30} Washington's second assignment of error states:
 {¶ 31} "II. The trial court erred in convicting and sentencing Appellant in violation of his State and Federal rights against Double Jeopardy."
 {¶ 32} Washington contends the constitutional prohibitions against his liberty being again placed in jeopardy for the same crimes are violated by retrial following appellate reversal and remand. However, it is "fundamental" that a successful appeal of a conviction precludes Washington's contention. State v. Keenan, 81 Ohio St.3d 133, 141,1998-Ohio-459. Hence, it is rejected and his second assignment of error also is overruled.
 {¶ 33} Washington's third and thirteenth assignments of error state:
 {¶ 34} "III. The trial court erred in denying Appellant's motion for acquittal when the state failed to present sufficient evidence of alleged criminal activity.
 {¶ 35} "XIII. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 36} Washington argues his convictions are supported by neither sufficient evidence nor the weight of the evidence. Washington contends the state failed to prove he either possessed or prepared for sale the drugs he provided to the two CRIs. Washington's argument lacks merit.
 {¶ 37} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 38} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175.
 {¶ 39} Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 40} Although the mere presence of a person in the vicinity of contraband is not enough to support the element of possession, if the evidence demonstrates defendant was able to exercise dominion or control over the illegal objects, defendant can be convicted of possession. Statev. Wolery (1976), 46 Ohio St.2d 316; cf., State v. Haynes (1971),25 Ohio St.2d 264. Moreover, where an amount of readily usable drugs is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs. State v. Benson (Dec. 24, 1992), Cuyahoga App. No. 61545; State v. Pruitt (1984), 18 Ohio App.3d 50. Circumstantial evidence alone is sufficient to support the element of constructive possession. State v. Jenks, supra; State v. Lavender (Mar. 12, 1992), Cuyahoga App. No. 60493. Finally, as to the condition of the drugs, testimony that the drug has been packaged in a usable amount constitutes circumstantial evidence of the defendant's preparation of them. State v.Stevens (Oct. 18, 2001), Cuyahoga App. No. 78958.
 {¶ 41} In this case, Brandon, Henderson and Mendolera provided evidence establishing every element of the offenses. Brandon testified Washington handed him the crack cocaine in exchange for the money, and Henderson further instructed the jury concerning both the relative costs of each weight purchased and the way the rocks had been packaged. Mendolera stated the pieces of mail retrieved from the apartment bore Washington's name as the addressee.
 {¶ 42} On similar facts, this court has determined a defendant's convictions for drug possession and preparation of drugs for sale were proper. State v. Hopkins (Sept. 5, 2002), Cuyahoga App. No. 80652; Statev. Hudson (Mar. 28, 2002), Cuyahoga App. No. 79010. Consequently, Washington's third and thirteenth assignments of error also are overruled.
 {¶ 43} Washington's fourth assignment of error states:
 {¶ 44} "IV. Appellant was denied due process of law when the trial court refused to allow the discovery of the informant's identity prior to trial."
 {¶ 45} Washington argues the trial court improperly failed to force the disclosure of the name of the second CRI. This argument lacks merit.
 {¶ 46} The state's privilege of non-disclosure of the identity of an informer is limited by fundamental fairness. Rovario v. United States
(1957), 353 U.S. 53. Thus, the privilege must yield if the defendant demonstrates the identity is either necessary or relevant. State v.Feltner (1993), 97 Ohio App.3d 279.
 {¶ 47} Washington made no such demonstration in this case. The police officers were in a position to monitor the December 1, 1999 transaction, and the jury acquitted Washington of every charge related to the alleged incident of January 3, 2000. Hence, the trial court did not act improperly in denying Washington's motion for disclosure of the identity of the second CRI. Id.; see also, State v. Parsons (1989),64 Ohio App.3d 63, 69; cf., State v. Williams (1983), 4 Ohio St.3d 74.
 {¶ 48} Washington's fourth assignment of error, accordingly, is overruled.
 {¶ 49} Washington's fifth assignment of error states:
 {¶ 50} "V. Appellant was denied due process of law when he was denied a fair tribunal."
 {¶ 51} Washington argues the trial judge's familiarity with the cases from the first trial compromised her impartiality. Since Washington, however, provides no additional support for a claim of bias and filed no affidavit of prejudice, his argument is rejected. See, In reDisqualification of Valen (1991), 73 Ohio St.3d 1204; Jones v.Billingham (1995), 105 Ohio App.3d 8, 11. Washington's fifth assignment of error is overruled.
 {¶ 52} Washington's sixth assignment of error states:
 {¶ 53} "VI. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth
and Fourteenth Amendments to the United States Constitution."
 {¶ 54} Washington argues his trial counsel provided ineffective assistance, mainly on the basis he failed to file a motion to suppress evidence. Washington asserts such a motion was justified because the search warrant for his apartment was "stale." This court disagrees.
 {¶ 55} In order to prevail on this claim, Washington first must demonstrate counsel failed in an essential duty. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. The record, however, does not support Washington even in this threshhold requirement.
 {¶ 56} Initially, this court notes that neither the search warrant nor the affidavit was supplied for this court's review. App.R. 9(B); App.R.12(A)(2). Next, decisions of defense strategy cannot be second-guessed on appeal. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Furthermore, counsel cannot be faulted for failing to perform a vain act. State v. Hudson, supra.
 {¶ 57} It is apparent in this case that the circumstances since the issuance of the warrant had not changed: Washington lived in the apartment building, and as of the day before the warrant was executed, met Brandon in the stairwell with the drugs and took the money. Consequently, counsel would have no tactical reason to challenge the validity of the warrant. See, United States v. Richmond (S.D.Ohio, 1988), 694 F. Supp. 1310.
 {¶ 58} Washington's remaining claims regarding trial counsel's performance similarly lack support, as the forthcoming discussions of his eleventh and twelfth assignments of error show. State v. Bradley, supra. Accordingly, Washington's sixth assignment of error also is overruled.
 {¶ 59} Washington's seventh assignment of error states:
 {¶ 60} "VII. The misconduct of the prosecutor violated Appellant's rights to a fair trial guaranteed by the Due Process provisions of Article I, Section 16
of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution."
 {¶ 61} Washington contends the prosecutor tainted the fairness of his trial by enabling prosecution witnesses to give improper testimony. This contention lacks merit.
 {¶ 62} Generally, the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trialfundamentally unfair. State v. Papp (1978), 64 Ohio App.2d
 {¶ 63} 203, cited with approval, State v. Maurer (1984),15 Ohio St.3d 239. Moreover, it has been held the trial court must afford the prosecutor some latitude. State v. Apanovich (1987), 33 Ohio St.3d 19;State v. Vrona (1988), 47 Ohio App.3d 145. A defendant shall be entitled to a new trial, therefore, only when a prosecutor either asks improper questions or makes improper remarks and those actions substantially prejudice the defendant. State v. Smith (1984), 14 Ohio St.3d 13; Statev. Keenan (1993), 66 Ohio St.3d 402.
 {¶ 64} Furthermore, a trial court has broad discretion in the admission and exclusion of evidence, and a reviewing court shall not reverse a trial court's judgment for failure to exclude evidence unless the trial court clearly has abused its discretion and the complaining party has suffered material prejudice. Columbus v. Taylor (1988),39 Ohio St.3d 162, 164. Accordingly, the trial court's judgment on this matter will not be reversed unless the trial court acted unreasonably, arbitrarily or unconscionably. Id. at 165; see, also, Evid.R. 403.
 {¶ 65} Washington initially takes issue with the reference to "sheriff's numbers" on the back of Washington's photograph during Mendolera's testimony about the array he showed Brandon. This brief allusion, however, cannot be deemed fundamentally unfair for two reasons.
 {¶ 66} First, the context of the prosecutor's question cannot be said to have created the impression the numbers had been placed there for a reason separate from the current cases. Second, the trial court sustained defense counsel's objection to Mendolera's testimony at that point and issued an admonishment to the jury to disregard the comment; the jury is presumed to have followed that directive. Pang v. Minch (1990),53 Ohio St.3d 186.
 {¶ 67} Similarly, any reference to Washington's prior criminal record was not improper. Defense counsel during cross-examination had raised the issue of whether the police merely had jumped to a conclusion in believing Brandon's story that Washington was a drug trafficker; thus, counsel's questions invited the prosecutor's questions. State v.Watson (Apr. 2, 2001), Cuyahoga App. No. 77494.
 {¶ 68} For the foregoing reasons, Washington's seventh assignment of error is overruled.
 {¶ 69} Washington's eighth assignment of error states:
 {¶ 70} "VIII. Appellant was denied due process of law when the court joined separate indictments for trial."
 {¶ 71} For the first time, Washington claims his two cases should have been tried separately. Since he never raised this issue in the trial court, however, it is waived. State v. Williams (1977), 51 Ohio St.2d 112.
 {¶ 72} Washington's ninth assignment of error states:
 {¶ 73} "IX. Appellant was denied his Constitutional Right when he was separately sentenced under multiplicitous (sic) indictments involving the same substance which were allied offenses of similar import."
 {¶ 74} Washington presents the argument that the crimes of drug possession, drug preparation for sale and drug trafficking may not be indicted as separate offenses pursuant to R.C. 2941.25(A). This court numerous times previously has rejected the argument. See e.g., State v.Hudson, supra; State v. Burnett (Mar. 20, 1997), Cuyahoga App. No. 70618; State v. Daanish (Jan. 6, 1994), Cuyahoga App. No. 65614. Hence, Washington's ninth assignment of error also is overruled.
 {¶ 75} Washington's tenth assignment of error states:
 {¶ 76} "X. Appellant was denied due process of law and Plain Error was committed when the Prosecutor called Appellant's wife to testify against him."
 {¶ 77} Despite his failure to object to the procedure at the time, Washington now asserts it was plain error for the prosecutor to call Sonja Washington as a witness at trial. Notice of plain error, however, is taken only under exceptional circumstances; such circumstances do not exist in this case. State v. Long (1978),53 Ohio St.2d 91.
 {¶ 78} It is clear from the context in which it occurred that the prosecutor's purpose in calling Washington's wife as a witness was only to establish the presence of children in the apartment. Especially in view of the jury's acquittal of Washington on the juvenile specifications contained in the indictment, this was not so important a matter that his wife's refusal to provide testimony compromised the fairness of his trial. See Evid.R. 601(B)(2).
 {¶ 79} Accordingly, Washington's tenth assignment of error is overruled.
 {¶ 80} Washington's eleventh assignment of error states:
 {¶ 81} "XI. Prejudicial error was committed by the admission of "other acts" testimony in violation of R.C. 2945.59, Evid.R. 404(B), and Appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 82} Washington again invokes the doctrine of plain error to excuse his failure to object at the time to certain statements made by prosecution witnesses that alluded to his possible involvement with drugs. "Other act" evidence, however, may be introduced if its probative value substantially outweighs its potential for unfair prejudice. State
v. Broom (1988), 40 Ohio St.3d 277.
 {¶ 83} In this case, a defense strategy was to question whether Mendolera focused a drug investigation on Washington only because Mendolera previously had attempted unsuccessfully to have Washington prosecuted. Thus, Washington's "scheme or plan" in conducting drug-related activities was highly relevant. The trial court, therefore, neither abused its discretion or committed plain error in permitting the testimony. State v. Smith (1990), 49 Ohio St.3d 137; State v. Szakacs
(May 8, 1997), Cuyahoga App. No. 70521.
 {¶ 84} Washington's eleventh assignment of error, accordingly, is overruled.
 {¶ 85} Washington's twelfth assignment of error states:
 {¶ 86} "XII. The trial court committed plain error by instructing the jury to determine Appellant's credibility by considering his prior conviction despite the fact that Appellant never testified."
 {¶ 87} Washington now claims a standard instruction regarding the weight to be given a prior drug conviction in evaluating a defendant's testimony compromised the fairness of his trial. His claim is rejected.
 {¶ 88} A single instruction to a jury may not be judged in isolation; rather, it must be viewed in context. State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus. Moreover, the failure to object to a jury instruction is a waiver of any claim of error unless the outcome of the trial may have been affected by the improper instruction. State v. Underwood (1983), 3 Ohio St.3d 12; State v. Long
(1978), 53 Ohio St.2d 91.
 {¶ 89} It is clear in this case that the instruction Washington now challenges was not improper in context. State v. Scott (1987),41 Ohio App.3d 313. In effect, the trial court indicated the introduction of evidence of Washington's prior conviction was irrelevant: the trial court instructed the jury that the evidence could be used only to judge the defendant's credibility if he testified, however, since the defendant had a constitutional right not to testify, "that fact" could "not be considered for any purpose."
 {¶ 90} Since the instruction, therefore, could not have compromised Washington's right to a fair trial, his twelfth assignment of error is overruled.
 {¶ 91} Washington's fourteenth assignment of error states:
 {¶ 92} "XIV. The court erred by sentencing Appellant to consecutive prison terms in violation of R.C. 2929.14(E) and R.C. 2929.19(B)(2)(c)."
 {¶ 93} Washington asserts the trial court failed to provide the requisite "rationale and basis" for its decision to impose some of his sentences consecutively. In view of the trial court's detailed discussion of the relevant statutes in relation to the sentences it determined were appropriate to his cases, Washington's assertion completely lacks foundation.
 {¶ 94} Pursuant to R.C. 2929.14(E)(4), the trial court may order consecutive sentences if it finds such service "is necessary to protect the public * * * and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct * * *." The court further must consider three other factors and, if any one of those factors applies, consecutive sentences are warranted. In this case, the trial court made the requisite findings specifically, and further explained that Washington was "dealing drugs in the vicinity of kids" during the "daylight hours" and continued to do so even after having been arrested for the same offenses in the first case.
 {¶ 95} Since the transcript of Washington's sentencing hearing thus demonstrates the trial court fully complied with statutory requirements in imposing consecutive terms, his fourteenth assignment of error also is overruled.
 {¶ 96} Washington's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J. and ANN DYKE, J. CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The United States Supreme Court discussed the reasons that make the constitutional right to a speedy trial "generically different" from other rights guaranteed to the accused at 519-523. Since many of these reasons do not have the same applicability to retrials, statutory time limits are not invoked.